**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

JO E. COMANS                                                                                  PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:06CV505 HTW-LRA

SCOTT COUNTY SCHOOL DISTRICT                            DEFENDANT

**ORDER GRANTING SUMMARY JUDGMENT**

This cause is before the court on defendant Scott County School District's motion for summary judgment filed pursuant to Rules 56(b) and (c),[1] Federal Rules of Civil Procedure. At an earlier date, the defendant's motion for summary judgment and motions in limine came before the court for hearing and oral argument by the parties' respective counsel. At the conclusion of the hearing, this court orally announced its decision to deny the defendant's motions in limine but to grant the defendant's motion for summary judgment on all of the counts in plaintiff's Complaint.

**FINDINGS OF FACT**

Comans was employed for one year as a high school history and language arts teacher at Scott Central Attendance Center, which is located within the Scott County School District ("SCSD") in Forrest, Mississippi. Gene Bright was the Scott Central

---

[1] Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Attendance Center Principal and Frank McCurdy was the SCSD Superintendent of Education during the relevant time period.

Comans was responsible for teaching 11th grade U.S. History and 8th grade Language Arts. When she arrived at Scott Central, Comans had no prior experience teaching in those two areas. In fact, Comans had only two years of teaching experience before she began working at Scott Central.

As Scott Central's Principal, Bright was charged with evaluating Comans' classroom performance. On November 10, 2004, Bright conducted an observation and evaluation of Comans' classroom performance. Bright says he made note of areas in which Comans performed well and areas in which Comans could improve her performance. Bright contends that his primary concerns centered on Comans' failure to use effective teaching strategies and her lack of classroom management skills. Bright says he believed that Comans could improve these areas of her performance.

Bright met with Comans on November 11, 2004, to discuss the evaluation and methods for improvement. Bright says that Comans was defensive, argumentative and emotionally distraught. Bright then asked the school counselor, Kim Shoemaker, to join the conference, supposedly to attempt to calm Comans. Bright did not find the conference productive.

Bright conducted another observation and evaluation of Comans' classroom performance on November 30, 2004. Again, Bright noted areas in which Comans performed well and areas in which Comans' performance could be improved. Bright again met with Comans to discuss the evaluation and offer his assistance in helping her to develop strategies for improvement. According to Bright, again she was entirely

2

uncooperative. According to Bright, Comans again became argumentative, defensive and emotionally distraught, and Bright was again forced to ask Shoemaker to join the meeting. Comans became so upset during the meeting that she asked to be excused from school for the rest of the day. Bright obliged her request and found another teacher to cover Comans' classes.

Later, Bright asked Dr. Janet McLin, SCSD's teacher-facilitator, to observe and evaluate Comans' performance. Dr. McLin did so on December 10, 2004, and on February 23, 2005. Dr. McLin noted Comans' strengths and weaknesses. Dr. McLin rated Comans' overall performance as "Needs Improvement" on the February 23, 2005, evaluation. Dr. McLin provided the evaluations to Bright. Dr. McLin discussed her evaluations with Comans. Comans responded by expressing her disagreement with the vast majority of Dr. McLin's findings.

Based upon his own observations of Comans' classroom performance and his reliance on Dr. McLin's observations of Comans' classroom performance, Bright says he determined that Comans did not use effective teaching strategies in her classes and that she lack classroom management skills. Further, says Bright, because Comans was unwilling or unable to make any efforts toward improving her performance, and because Comans appeared unwilling to establish a professional working relationship with Bright, Bright says he decided not to renew Comans' teaching contract for the following year.

Comans filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation in violation of Title VII on August 12, 2005. She later amended her Charge of Discrimination and Retaliation

3

on November 9, 2005, to include the non-renewal with the SCSD as being both discriminatory on the basis of sex and in retaliation for her opposing preferential treatment given to male teachers and, in particular, male coaches within the defendant SCSD.

Upon receiving a "right-to-sue" letter, Comans filed a Complaint against Scott County School District and Frank McCurdy, individually and in his official capacity as Superintendent, charging the defendants with unlawful employment practices on the basis of sex and retaliation in violation of Title VII,[2] Title 42 U.S.C. §2000e, *et seq.*, the Civil Rights Act of 1964, as amended ("Title VII"); and Title 42 U.S.C. §1983.[3] Plaintiff Comans further charged the defendants with wrongful and retaliatory discharge and breach of contract.

Defendant Frank McCurdy was dismissed as a party defendant on March 12, 2008. The remaining defendant, SCSD, has filed for summary judgment pursuant to

---

[2]Title VII, 42 U.S.C. § 2000e-2(a) provides:

(a) It shall be an unlawful employment practice for an employer -

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, or conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; ...

[3]Title 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4

Rule 56[4] of the Federal Rules of Civil Procedure.  Comans opposes the motion, contending that defendant SCSD is not entitled to summary judgment as a matter of law and that she is entitled to proceed toward a trial on the merits in regard to the claims that she has raised in her Complaint against this defendant.

## CONCLUSIONS OF LAW

### Motion for Summary Judgment

**I.     Summary Judgment Standard**

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to the non-moving party's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986).  Once the moving party satisfies that requirement, the non-moving party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324 (internal quotations and citations omitted).   Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322.

**II.    Title VII And §1983 Claims**

Comans' Title VII and §1983 sex discrimination and retaliation claims are subject to the familiar *McDonnell Douglas* burden-shifting framework.  Comans must establish

---

[4]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

5

a *prima facie* case of discrimination/retaliation; if she does so, SCSD must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The burden then shifts back to Comans to demonstrate that the articulated reason is untrue and is merely a pretext for intentional discrimination based on her sex/protected conduct under Title VII. *McDonnell Douglas*, 411 U.S. at 802-04.

**A.    Sex Discrimination**

To establish a prima facie case of sex discrimination, Comans must show that she: (1) is a member of a protected class, (2) was discharged, (3) was otherwise qualified for the position from which she was discharged, and (4) was either replaced by an individual outside her protected class or a similarly situated employee outside of her protected class was treated more favorably under nearly identical circumstances. *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

Comans cannot show a genuine issue of material fact as to the fourth element of her prima facie case. It is undisputed that Comans was replaced by a female, Jennifer Cabello. The only arguably similarly situated comparator is a male teacher whom Bright also determined did not use effective teaching strategies and lacked classroom management skills. That male teacher's contract was also non-renewed. Accordingly, Comans cannot show that a similarly situated male was treated more favorably under nearly identical circumstances.

The entire basis for Comans' sex discrimination claim is her belief that some (not all) males received preferential treatment. She confirmed as much in her deposition:

6

> Q: Well, why do you contend that you were not renewed because you're a female?
>
> A: Well, basically that's - the males were treated pref - had preferential treatment. If you were a coach and a couple of male teachers, then you were treated with preference.

(Comans depo. at 55-56). Comans alleges that this "preferential treatment" manifested itself when coaches were allowed to keep students out of her (and others') classroom for sports related activities. (Comans depo. at 56-57).

Comans does not connect that alleged "preferential treatment" with the non-renewal of her contract (the only adverse employment action she experienced). In fact, Comans admits that her employment status was not affected by the alleged "preferential treatment." (Comans depo. at 68-69). When asked how she was harmed by the alleged "preferential treatment," the only harm Comans identified was to the students' education:

> A: Because I was there for the children. The children should have been in the classes. They were to be State-tested. And being held out of that class harmed them, you know. It hurt their chances passing the U.S. history SATP or scoring proficient on the language arts. So, you know, when they missed that instructional time and then if they're not in tutoring, then they have lost that, you know. And then, you know, when I could accommodate, I would go back and have -- go over that stuff, and then, you know, you have got, you know, some of the class that that have to sit there and become idle because I'm having to go back and instruct you -- or these students on this matter when they were in the gym or on the football field, the weight-lifting room, the field house or whatever. So, you know, it's -- as far as me having to go back, I lost valuable instruction time that I could have moved on and moved the students ahead, and it harmed the children. Because that was the reason I was there, to instruct them for their -- for those purposes.

(Comans depo. at 68-69).

Nor does Comans allege that she was singled out because of her gender or that similarly situated males were treated more favorably under nearly identical circumstances. She simply alleges that coaches were treated more favorably than all other teachers. (Comans depo. at 66- 67).

Even if Comans had connected the alleged preferential treatment to the non-renewal, her sex discrimination claims fail because she does not allege that the preferential treatment was based on SEX.

Comans alleges that female coaches and a female club sponsor were also given preferential treatment. Comans testified that two female cheerleader sponsors and the female Beta club sponsor were given preferential treatment because they also were allowed to keep students out of the classroom for sporting and club events. (Comans depo. at 56-58, 97, 107, 172). Moreover, Comans admits that all teachers (both male and female) would have been affected by the alleged preferential treatment. (Comans depo. at 66-67).

In fact, Comans does not even believe that the coaches or male teachers received preferential treatment because of their sex. Comans instead believes that coaches received preferential treatment because of the school's focus on athletics. We turn again to her deposition:

> Q: Okay. And why do you think coaches receive preferential treatment?
>
> A: Well, it was athletics. Athletics was a big thing at the school in Scott County - or at least at Scott Central. Let me speak for Scott Central.

(Comans depo. at 67-68). Comans believes that the two male teachers she referenced

received preferential treatment because Principal Bright generally liked those individuals more than others:

> Q: Okay. What about Michael Miles; tell me why you felt he got preferential treatment.

\*\*\*

> A: Okay. I -- it seemed apparent if Mr. Bright liked you or if you had been there a while, then you received preferential treatment, you know. Why? I cannot give you the specifics. It's just - that's the way it was.

\*\*\*

> Q: . . . Then you mentioned a Mr. Fanguy is the other teacher that you said you felt received preferential treatment?
>
> A: Well, actually, I don't know how to explain his. He was just like -- in my opinion, like a favorite child.

\*\*\*

> A: Well, it's -- I don't recall anything specific. It was just -- you know, it was -- just seemed apparent, you know, that [Mr. Fanguy] was well-liked by Mr. Bright. So I can't, you know, expound on that, because it's just -- it was just -- that was my opinion in that matter. I don't recall anything specific right at this minute.

(Comans depo. at 59, 65-66).

Here, Comans has confused discrimination based on her sex with discrimination based on a preference for athletics over academics. Even if Comans' allegations were true, all of the teachers (both male and female) would have been affected by Scott Central's preference for athletics and its "preferential treatment" of its coaches. *See Hannon v. R.L. Polk & Co.*, No. 94-10457, 1994 WL 684969 at *1 (5th Cir. Nov. 22, 1994); and *Lamb-Bowman v. Delaware State University*, 152 F.Supp.2d 553 (D. Del. 2001), *aff'd* 39 F.Appx. 748 (3rd Cir. 2002). Accordingly, this court concludes that Comans' allegations of "preferential treatment" do not raise an inference of sex

9

discrimination.

SCSD has articulated a legitimate, nondiscriminatory reason for its actions. Based on Bright's observations and on Dr. McLin's observations of Comans' classroom performance, Bright determined that Comans did not use effective teaching strategies and lacked effective classroom management skills and that Comans was either unwilling or unable to improve her performance.

Comans has failed to point to any evidence that suggests a discriminatory animus or that gender was a motivating factor in the non-renewal of her contract. In fact, Principal Bright made the decision to both hire Comans and not to renew Comans' contract. Unpersuaded that Comans has lifted her claim over the bar of rejection, this court dismisses her sex discrimination claim.

### B. Retaliation

Comans contends that she "was unlawfully discriminated against based on . . . retaliation in violation of Title VII." (Compl. at ¶ 18). According to Comans, she was terminated in retaliation for making three complaints during her employment:[5] (1) that coaches and club sponsors should not be allowed to keep students out of the classroom for practices or events, (2) that she should not be asked to watch one coach's classroom in the morning if the coach was late or occupied, and (3) that she should have been allowed to give updates to her students on the medical condition of an African American student who had committed suicide. Comans' retaliation claim

---

[5]Comans also alleges that she complained to Bright about one of her student's parents yelling at her and causing a scene in the hallway. (Comans depo. at 99-101). However, Comans does not base her retaliation claim on that complaint. (Comans depo. At 143-144). Even if she did, that activity is not covered by Title VII.

fails because these complaints do not constitute protected activity under Title VII.

To establish a prima facie case of retaliation, Comans must show that: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001) (citation omitted). Comans, however, cannot point to a genuine issue of material fact with regard to the first or third elements required of a prima facie case.

According to Comans' own testimony, she never complained that she was being treated differently because she was a female; instead, she complained that she "didn't think [it] was fair" that she was being asked to watch one coach's class if he arrived late in the morning and that students should not be kept out of class to attend athletic events. (Comans depo. at 102-03, 114).

Comans also complained that female cheerleader coaches and a female Beta club sponsor were allowed to take students out of the classroom:

> Q: Okay. Did you complain about the cheerleader sponsors requiring students to be released?
>
> A: I had spoke to Mr. Bright about that, that, you know - and told him that they had been - they were taken out of class at 2:20, which was seventh period, and he said, well, they needed that time in order to get dressed for the pep rally.

\*\*\*

> Q: And what were your complaints about Ms. Bagnall [Beta club sponsor]?
>
> A: She would keep students out of class or send for them.

(Comans depo. at 107, 172).

Because Comans never complained that she believed she was being treated

11

differently because of her sex, and because she complained about males and females, she clearly did not lodge complaints of sex discrimination. *See, e.g., Marquez v. Voicestream Wireless Corp.*, No. 04-50298, 2004 WL 2677040, at *2 (5th Cir. Nov. 24, 2004) (rejecting plaintiff's Title VII retaliation claim; plaintiff only reported that supervisor asked her to go out for drinks on two occasions and did not protest that the invitations were sexual harassment or otherwise unwelcome and "[w]ithout an allegation that she reported unlawful activity . . . [plaintiff's] conversations with [her employer] were not protected activity").

Similarly, Comans' complaints regarding the purported preferential treatment afforded to coaches (and other female club sponsors) were not related to her gender. If coaches (and other female club sponsors) received preferential treatment, that favoritism affected both male and female teachers alike. Accordingly, those complaints are not protected activity under Title VII. *See also Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 (5th Cir. 2003) ("[W]hen an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender;" thus, "the fact that [the plaintiff] may have been terminated for complaining about favorable treatment received by [her supervisor's paramour] is unrelated to [the plaintiff's] gender" and not protected by Title VII.).

Comans also alleges that she was terminated in retaliation for complaining to Bright that the school was treating the circumstance where an African American student had committed suicide differently than the circumstance of a white student who had been injured in a car wreck. During the 2004-2005 academic year, an African American

12

student at Scott Central committed suicide. While the student was in the hospital during the time period before he passed away, Comans talked to her students about his condition. When several students complained to the school administration that Comans' comments were upsetting, Counselor Kim Shoemaker asked Comans to stop initiating large group discussions about the student's condition and to direct any questions or concerns to her.

According to Comans, another teacher told her that a white student had been in a car accident several years earlier, and teachers were allowed to give students daily updates on his condition. Comans contends that she complained to Bright that the differing treatment was discriminatory. She testified that she did not perceive any difference in talking to young students about a student who had committed suicide and a student who was in a motor vehicle accident.

Comans cannot base a Title VII retaliation claim on that purported complaint because the underlying conduct - discrimination against a student - is not actionable under Title VII. "[O]pposing an employer's actions outside the ambient of an employment practice is unprotected by Title VII." *Artis v. Francis Howell N. Ban Booster Ass'n, Inc.*, 161 F.3d 1178, 1183 (8th Cir. 1998).

In *Artis*, 161 F. 3d at 1183, the plaintiff, a marching band instructor, asserted a Title VII retaliation claim based on an allegation that he had been fired in retaliation for complaining to school administrators about the principal's disparate treatment of a black student and a white student. The Court held that opposing discrimination towards students is not actionable under Title VII and, accordingly, rejected the plaintiff's Title VII retaliation claim. *Id. See also Evans v. Kansas City, Mo. Sch. Dist.*, 65 F. 3d 98,

13

101 (8th Cir. 1995) (finding no Title VII violation where employee complained about school principal's actions in complying with a desegregation order because such a complaint is not based on an employment practice); *Holt v. Lewis*, 955 F. Supp. 1385 (N.D. Ala. 1995) (complaint about university's discrimination against a student did not involve an employment practice and thus any retaliation plaintiff suffered for advocating that student's rights was not prohibited by Title VII).

Further, Comans cannot establish a causal connection between her complaints and non-renewal, which is the third element of her *prima facie* case. The standard for showing a causal connection at the *prima facie* stage is less stringent than the ultimate but-for causation standard. *Ackel*, 339 F. 3d at 385. "Nevertheless, the plaintiff must produce some evidence of a causal link between the protected activity and the adverse employment action to establish a *prima facie* case of retaliation." *Id.* Comans has produced nothing more than her own subjective belief that her contract was not renewed because of the complaints she made. She cannot establish a causal connection between her non-renewal and her (unprotected) complaints.

Even if Comans could make out a prima facie case of retaliation, her claim fails because she failed to point to a genuine issue of material fact with regard to pretext. Comans' only evidence of pretext are her subjective beliefs and her allegation regarding timing, that her discharge came shortly after her voiced complaints. Temporal proximity alone, however, is not sufficient to establish pretext in a retaliation claim. *Strong v. Univ. HealthCare Sys. L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). And, subjective beliefs are insufficient to create a genuine issue of material fact on a retaliation claim. *See, e.g., Travis v. Bd. of Regents of the Univ. Of Tex. Sys.*, 122 F.3d 259, 266 (5th Cir.

1997).

**Section 1983 First Amendment Wrongful Termination.**

Comans asserts a First Amendment[6] claim based on her contention that her contract was not renewed in retaliation for her complaint regarding discrimination against a student. Comans contends that she was criticized by SCSD for initiating group discussions with her high school students regarding a peer's suicide and that she complained she should not have been criticized for doing so. She also contends she complained that SCSD allowed teachers to discuss the medical condition of a student (who was white) who had been in a motor vehicle accident several years earlier but would not allow her to discuss the medical condition of the student who had committed suicide (who was African American).

Comans did not raise a First Amendment claim in her Complaint and did not move to amend her Complaint. Accordingly, she waived the claim. *Cutrera v. Bd. of Supervisors of La. State Univ.,* 429 F.3d 108, 113 (5th Cir. 2005).

Even if Comans had asserted a First Amendment claim, summary judgment would be appropriate. To succeed on a claim of First Amendment retaliation, a plaintiff must show that she spoke as a citizen on a matter of public concern. *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007).

Comans' alleged complaints regarding the student were not made in her capacity as a citizen and did not involve matters of public concern. She raised complaints up the

---

[6]The First Amendment to the United States Constitution reads as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

chain of command at her workplace regarding SCSD's criticism of her performance of her job duties. Comans made no attempt to air her complaints in public. Accordingly, her speech was not protected by the First Amendment.

**Breach of Contract.**

Comans entered into a contract of employment with SCSD for the 2004-2005 academic year only; she admits that the terms of that contract were fulfilled by both parties. Accordingly, her breach of contract claim fails. *See, e.g., Colburn v. Trustees of Indiana University*, 739 F. Supp. 1268, 1302 (S.D. Ind. 1990) ("[p]laintiffs had one year definite term contracts. Plaintiffs were not discharged during the term of any contract, so that aspect of their contract law claims must fail. In short, the one year contracts were fulfilled.").

## **CONCLUSION**

For all of the foregoing reasons, the court grants summary judgment to the defendant and against plaintiff on all of the counts in plaintiff's Complaint. In accordance with the local rules, this court will enter a final judgment.

**SO ORDERED, this the 30th day of April, 2010.**

            **s/ HENRY T. WINGATE**
            **CHIEF JUDGE**
            **UNITED STATES DISTRICT COURT**

Civil Action No. 3:06-cv-505 HTW-LRA
Order Granting Summary Judgment